IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TOMOKO FUNAYAMA | : |
| | : |
| **Plaintiff,** | : |
| | : CIVIL ACTION |
| v. | : |
| | : 13-2667 |
| CITY OF PHILADELPHIA, et. al., | : |
| | : |
| **Defendants.** | : |

MEMORANDUM

**Stengel, J.**                                                                                                                   April 9, 2015

Tomoko Funayama has prosecuted this *pro se* action alleging that Philadelphia Police Officers Michael Lawson and Robert Klineburger violated her First and Fourth Amendment rights. The defendants have moved for summary judgment. For the reasons that follow, I will grant the motion in part.

**I        Background**

Ms. Funayama is a former employee of the Nichia Corporation. Pl. Dep., doc. no. 31-1, 7:18-20. The circumstances of her employment with Nichia have been the subject of two prior suits in this court. Funayama v. Nichia Am. Corp., No. 08-5599 (E.D. Pa. filed Dec. 2, 2008); Funayama v. Nichia America Corp., No. 12-5406 (E.D. Pa. filed Sep. 21, 2012). On May 18, 2011, while the second lawsuit was pending, Ms. Funayama staged a protest at the Pennsylvania Convention Center where Nichia was exhibiting. Pl. Dep. 8:19-9:2. Dressed in a full kimono, Ms. Funayama picketed outside the Convention Center carrying a sign which read "Illuminate Nichia Discrimination of Women" on one side, and "God Hates Nichia Pornography" on the other. Id. 12:21-13:5. Charles Carson,

1

Ms. Funayama's husband, traveled with Ms. Funayama to the Convention Center with the couple's five year old daughter. Id. 12:2-7. Mr. Carson stood off to the side and did not participate in the protest. Id.

A Nichia employee attending the convention alerted police to Ms. Funayama's protest. Klineburger Dep., doc. no. 34-3, 16:8-12; Lawson Dep., doc. no. 34-4, 18:7-25. According to defendants, Officer Lawson approached Ms. Funayama to conduct a routine investigation. The purpose of the investigation was to find out how many people were protesting, how long the protest would last, what Ms. Funayama was protesting, and to determine if the protest was orderly or disorderly. Klineburger Dep. 19:16-23; Lawson Dep. 21:5-10.[1] Pursuant to procedures, the officers were to report the information to the Civil Affairs unit, and Civil Affairs would monitor the situation if appropriate. Klineburger Dep. 19:20-24. Officer Klineburger joined Officer Lawson for the investigation, but Ms. Funayama was unaware of Officer Klineburger's presence. Pl. Dep. 12:24-13:10, 20:1-5; Lawson Dep. 16:3-22; Klineburger Dep. 12:19-20.

Ms. Funayama says she was intimidated by Officer Lawson's presence. Pl. Dep. 16:16-22. Apparently, Mr. Carson agreed. Soon after Officer Lawson began questioning Ms. Funayama, Mr. Carson approached. Id. 16:4-5. According to Ms. Funayama, Mr. Carson asserted that Ms. Funayama was only conducting a peaceful protest and wanted to know why Officer Lawson was questioning her. Id. 17:21-23. Officer Lawson responded, "you don't want to go there, if you go there things will get ugly, you don't want to go there in front of your little girl." Id. 18:3-5. Fearing the encounter with Officer Lawson

---

[1] Ms. Funyama maintains that she answered Officer Lawson's questions. According to the Officers, Ms. Funayama would not speak to Officer Lawson. Def. Lawson's Dep. 19:19-21; Klinburger Dep. 20: 8-12.

2

would escalate, Ms. Funayama ended her protest. Id. 19:11-15. Officer Lawson's recollection of events differs. He describes Mr. Carson as "irate." Lawson Dep. 27:15. Rather than threaten Ms. Funayama, Officer Lawson merely told Mr. Carson to calm down because the child was getting upset. Id. 28:4-9.

The remaining facts are not in dispute. Officer Lawson neither instructed Ms. Funayama to end her protest nor demanded that Ms. Funayama and Mr. Carson leave the area. Pl. Dep. 19:8-10. Mr. Carson asked if he and Ms. Funayama were under arrest and Officer Lawson responded they were not. Id. 18:19-19:7; Lawson Dep. 27:16-23. Mr. Carson "grabbed" Ms. Funayama, placed her in a car, and the family drove away. Pl.'s Dep. 18:16-18; Klineburger Dep. 22: 20-21; Lawson Dep. 27:25 – 28:2. Officer Klineburger wrote the incident report. Klineburger Dep. 9:20-23; Lawson Dep. 15:21.

## II      Standard of Review

A motion for summary judgment may be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is proper when no "reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A party seeking summary judgment initially bears the burden of identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is therefore appropriate when the non-moving party fails to rebut the moving party's argument by pointing to evidence that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial." Celotex, 477 U.S. at 322. "Evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255.

**III     Discussion**

Ms. Funayama has adduced no evidence that Officer Klineburger violated her civil rights. "A defendant in a civil rights action must have personal involvement in the alleged wrongs…." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citing Parratt v. Taylor, 451 U.S. 527, 537 n. 3 (1981)). Officer Klineburger authored the incident report describing Officer Lawson's interaction with Ms. Funayama, but I fail to see how writing the police report violated Ms. Funayama's rights under the First or Fourth Amendment. Otherwise, Officer Klineburger did nothing to stop Ms. Funayama's protest. Indeed, Ms. Funayama was not even aware that Officer Klineburger was present when Officer Lawson was questioning her. I will enter summary judgment in favor of Officer Klineburger.

There is no factual basis for Ms. Funayama's Fourth Amendment claim. An officer is liable for a false arrest if the officer makes an arrest without probable cause. Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988) (citations omitted). "A person is seized for Fourth Amendment purposes only if he is detained by means intentionally applied to terminate his freedom of movement." Berg v. Cnty. of Allegheny, 219 F.3d 261, 269 (3d Cir. 2000). There is no dispute that Officer Lawson told Ms. Funayama that she was not under arrest, and in fact, she was allowed to leave. At best, Ms. Funayama has adduced evidence of an investigatory stop; however, an investigatory

4

stop does not support a cause of action for wrongful arrest. *See* Rabin v. Flynn, 725 F.3d 628, 636-37 (7th Cir. 2013) (Rovner, J., concurring) (discussing when a Terry stop "transforms" into a wrongful arrest); Brown v. Lynch, 524 F. App'x 69, 74 (5th Cir. 2013) (to assess claim for wrongful arrest the court must "locate the constitutionally significant point at which the stop escalated to an arrest"). Since Officer Lawson did not arrest Ms. Funayama, I will dismiss the Fourth Amendment claim.

Ms. Funayama has produced sufficient evidence to advance her First Amendment claim against Officer Lawson. The First Amendment declares that "Congress shall make no law ... abridging the freedom of speech ... or the right of the people peaceably to assemble." Picketing, the activity in which Ms. Funayama engaged, is a form of expression protected by the First Amendment. *E.g.,* Shuttlesworth v. City of Birmingham, Ala., 394 U.S. 147, 152 (1969). When a picketer takes her protest to a public forum, such as a sidewalk, "the government may enforce reasonable time, place, and manner regulations as long as the restrictions 'are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication.'" United States v. Grace, 461 U.S. 171, 177 (1983) (citations omitted).

While First Amendment claims are typically triggered by statute or ordinance, issues may arise through the conduct of police officers. "[P]olice may not interfere with demonstrations unless there is a 'clear and present danger' of riot, imminent violence, interference with traffic or other immediate threat to public safety." Jones v. Parmley, 465 F.3d 46, 56-58 (2d Cir. 2006) (citing Cantwell v. Connecticut, 310 U.S. 296, 308–

5

309 (1940)). Such interference includes arrest and excessive searches in violation of the Fourth Amendment. Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1182 (11th Cir. 2009) (citing Edwards v. South Carolina, 372 U.S. 229, 235, (1963); Cox v. State of Louisiana, 379 U.S. 536, 545 (1965)). Even in the absence of the use of force, a civil rights claim will lie if threats or discrete acts of police intimidation have a deterrent, or chilling, effect on the plaintiff's First Amendment expression. Laird v. Tatum, 408 U.S. 1, 11 (1972); Trotman v. Bd. of Trustees of Lincoln Univ., 635 F.2d 216, 229 (3d Cir. 1980) (citing Aebisher v. Ryan, 622 F.2d 651 at 655 (2d Cir. 1980)); Palma v. Atl. Cnty., 53 F. Supp. 2d 743, 753 (D.N.J. 1999) (citing Mendocino Envtl. Ctr., 14 F.3d 457, 464 (9th Cir. 1994)).

When a plaintiff alleges that police conduct had a chilling effect, plaintiff must establish the elements of a First Amendment retaliation claim. Sloman v. Tadlock, 21 F.3d 1462, 1469 n. 10 (9th Cir. 1994) (citing Mozzochi v. Borden, 959 F.2d 1174, 1179 (2nd Cir.1992)). Accordingly, Ms. Funayama must prove that (1) her conduct was constitutionally protected, (2) Officer Lawson's actions were sufficient to deter a person of ordinary firmness from exercising her constitutional rights, and (3) that deterring Ms. Funayama's protest was a substantial or motivating factor in Officer Lawson's conduct. *See* Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir.2006) (setting forth the elements of a First Amendment retaliation claim); Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000) (describing the causation element as a "substantial or motivating factor"). Causation, the third element, should be determined by the trier of fact. Curinga v. City of

Clairton, 357 F.3d 305, 309 (3d Cir.2004); Ford v. City of Yakima, 706 F.3d 1188, 1194 (9th Cir. 2013).

According to defendants, Ms. Funayama's First Amendment claim fails because the constitution does not prohibit Officer Lawson from speaking with a protester. However, defendants ignore the possibility that Officer Lawson's words could have a chilling effect. On this material issue, the parties dispute what Officer Lawson told Ms. Funayama. If a jury believes that Officer Lawson threatened that "things will get ugly," a jury could find that his words would deter a person of ordinary firmness. The jury could also infer, based on those words alone, that Officer Lawson intended to chill Ms. Funayama's protest. Since a material fact is in dispute, Ms. Funayama's First Amendment claim may proceed to trial against Officer Lawson.

Finally, Ms. Funayama has no triable cause of action against the City of Philadelphia. A municipality is liable under Monell only when the plaintiff's constitutional rights are violated as a result of the municipality's policy or custom. Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978). At their depositions, Officers Lawson and Klineberger testified that, pursuant to Philadelphia Police Department policy, they interviewed Ms. Funayama to determine the nature, size, duration and orderliness of the protest. However, there is no evidence that this policy encourages officers to intimidate protesters. Thus, any inappropriate conduct by Officer Lawson cannot be imputed to the City. I will grant summary judgment in favor of the City of Philadelphia.

**IV        Conclusion**

For the foregoing reasons, I will grant defendants' motion for summary judgment in part. All claims against the City of Philadelphia and Officer Klinberger are dismissed. Ms. Funayama's Fourth Amendment Claim is dismissed. Defendant's motion for summary judgment is otherwise denied.

An appropriate order follows.